# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHANLIAN QUAN and KWAN JOONG KIM, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 17 C 5683 |
| TY, INC., | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Shanlian Quan and Kwan Joong Kim sued Ty, Inc., alleging copyright and patent infringement. Ty has moved for summary judgment on the basis of equitable estoppel and abandonment. For the reasons stated below, the Court denies the motion.

## Background

    The following facts are undisputed except where otherwise noted. Kim designs and manufactures plush toys in China through his company Creatail HK Limited. Beginning in 2013, Ty, Inc.—the company known for making Beanie Babies—entered into an oral agreement with Kim to have Creatail manufacture fifteen models of toys. As part of the production process, Creatail affixed to the toys hangtags and sewn-in labels that bore Ty's trademarks and included the mark "© Ty Inc." Other than a factory identification number that allegedly identified Creatail as the manufacturer, the tags and labels did not reference the plaintiffs or their alleged intellectual property interest in the toys.

The agreement between Ty and Kim ended in August 2015. Ty contends that it canceled its order after it learned that Kim and Creatail planned to begin manufacturing the toys in-house, rather than through a subcontractor. In October, after Kim learned that Ty had contracted with another manufacturer to produce the toys, he sued the manufacturer for intellectual property infringement in Chinese court. As a result of that suit, the Chinese Customs Office seized a shipment of Ty's goods on November 30, 2015. Ty eventually prevailed in that case, with the Chinese court concluding that Ty was the rightful owner of the copyrights in the toys.

In 2017, Kim and his wife Shanlian Quan brought this suit against Ty, alleging copyright infringement. Quan also contends that Ty infringed her design patent in one of the toys.[1] Ty has moved for summary judgment.

**Discussion**

Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). The moving party must show that "no reasonable jury could find for the other party based on the evidence in the record," *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018), and it "'always bears the initial responsibility' to identify the portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact,'" *Hutchison v. Fitzgerald Equip. Co.*, 910 F.3d 1016, 1021 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In evaluating the evidence, the Court "view[s] all

---

[1] Kim designed the toy, a plush seal that Ty markets under the name "Wiggy," and is named as its inventor in the patent. Kim assigned the patent rights to Quan in December 2015.

facts and draw[s] all reasonable inferences in favor of the nonmoving party." *Ashby v. Warrick Cty. Sch. Corp.*, 908 F.3d 225, 230 (7th Cir. 2018).

**A.     Copyright estoppel**

Ty contends that it is entitled to summary judgment on the plaintiffs' copyright claim based on the doctrine of equitable estoppel. Specifically, Ty argues that Kim is equitably estopped from claiming that Ty infringed his copyrights because Kim's company Creatail affixed Ty's copyright notice to millions of toys it manufactured. Ty contends that it had no knowledge of the plaintiffs' claimed intellectual property interests in the toys, which the plaintiffs admit they did not disclose. Ty also maintains that by affixing the copyright notice without disclosing Kim's alleged copyrights, the plaintiffs prevented Ty from negotiating a license agreement for the toys and caused it to enter into an allegedly unlawful manufacturing agreement with another company.

In the context of copyright infringement, the defense of equitable estoppel applies "when a copyright owner engages in intentionally misleading representations concerning his abstention from suit, and the alleged infringer detrimentally relies on the copyright owner's deception . . . ." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 684 (2014); *see also Bourne Co. v. Hunter Country Club, Inc.*, 990 F.2d 934, 937 (7th Cir. 1993) ("[E]stoppel applies only if the copyright owner is aware of the infringing conduct yet acts in a way that induces the infringer reasonably to rely upon such action to his detriment.").

Ty contends that equitable estoppel bars Kim's copyright claim because Kim, by manufacturing millions of toys and attaching Ty's copyright notice to them, effectively represented that he lacked any intellectual property interest in the toys—and therefore

had no basis for a copyright claim against Ty—despite knowing about Ty's alleged infringement. The parties agree that the defense of equitable estoppel requires Ty to establish four elements: (1) Kim knew of Ty's infringing conduct, i.e. selling infringing toys (those made by the other company); (2) Kim intended that his conduct—putting labels on Creatail's toys with Ty's copyright notice—be acted on or acted such that Ty had a right to believe that it so intended; (3) Ty was ignorant of the true facts, specifically, that Kim claimed to own copyrights in the toys he manufactured; and (4) Ty detrimentally relied on the plaintiff's conduct by failing to negotiate a license agreement with Kim and entering into a manufacturing agreement with another company. *See* 18 Am. Jur. 2d Copyright & Literary Prop. § 268; *see also Nat'l Bus. Lists, Inc. v. Dun & Bradstreet, Inc.*, 552 F. Supp. 89, 96 (N.D. Ill. 1982). The plaintiffs argue that factual disputes regarding the first and third elements preclude summary judgment.

### 1. Ignorance of the true facts

The plaintiffs contend that there is a genuine dispute about whether Ty was aware that Kim claimed to own copyrights on the fifteen disputed toys. Ty relies on an affidavit by its Vice President of Information Technology, Chris Johnson, who attests that "Ty had no knowledge that Kim or Quan claimed to own any intellectual property rights in these toys." Johnson Decl., dkt. no. 56-2, ¶ 28. Johnson also states that if Ty had known about Kim and Quan's claimed intellectual property interests in the toys, it would have required them to acknowledge in writing that the toys were Ty's intellectual property. *Id.* ¶ 29.

The plaintiffs contend that Johnson's affidavit is insufficient to support summary judgment. First, they argue that Johnson lacks first-hand knowledge about what Ty

knew. But he testified during his deposition that he was heavily involved in Kim's operation, traveling to China five times each year to work with Kim on the manufacturing process. This testimony is consistent with Kim's August 19, 2015 e-mail describing a lengthy meeting with Johnson about manufacturing details. *See* Kim E-mail, Johnson Decl. Ex. 6, dkt. no. 56-2, at 37. Given Johnson's professional role, the record reflects that he has a sufficient foundation to attest to Ty's knowledge, or lack thereof, about Kim's claimed intellectual property interests.

Second, the plaintiffs contend that Johnson's affidavit is insufficient because his statements about what Ty would have done had it known about Kim's alleged copyrights are unsupported by documentary evidence. In its reply, Ty points to written agreements it made with other manufacturers confirming that Ty owns the intellectual property rights of the toys it manufactures. These documents undermine that the plaintiffs' assertion that Johnson "lack[s] any foundation" for his affidavit. Pls.' Resp. Br., dkt. no. 66, at 5.

The plaintiffs next argue that Ty must have known about Kim's alleged copyrights because "Ty is a large company and has an in-house legal team." Pls.' Resp. Br., dkt. no. 66, at 3. But the plaintiffs point to no evidence that Ty could or should have known about Kim's copyright claims in particular. Mere speculation is insufficient to withstand summary judgment. *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016).

Finally, the plaintiffs argue that Ty must have been aware of their claimed copyright interests at least as early as November 30, 2015 when the Chinese government seized a shipment of Ty's goods in connection with Kim's lawsuit in Chinese court. The plaintiffs contend that the seizure gives rise to a genuine dispute

5

regarding whether Ty can invoke equitable estoppel after that date. Although Ty does not dispute that it knew of Kim's claimed intellectual property interests at least by the date its goods were seized, it contends that by that point it had already detrimentally relied on the plaintiffs' conduct in manufacturing the toys bearing Ty's copyright notice because it had contracted with another manufacturer to produce the toys. The fact that Ty eventually learned of Kim's claimed copyrights does not eliminate the equitable estoppel defense if the plaintiffs' conduct satisfied the elements of the defense during the period when Creatail was manufacturing the toys. *C.f. Keane Dealer Services, Inc. v. Harts*, 968 F. Supp. 944, 948 (S.D.N.Y. 1997) ("[A] general rule, such as that proposed by plaintiffs, that detrimental reliance ends when a lawsuit is filed would obviate estoppel as an equitable defense.").

Based on the evidence in the record, the Court concludes that no reasonable jury could find that Ty knew about Kim's alleged copyright interest in the toys during the relevant time period.

### 2. Knowledge of the infringing conduct

The plaintiffs next contend that there is a genuine dispute regarding element one of the estoppel defense: whether they knew of Ty's alleged infringement. Their argument turns on the first sale doctrine, codified at 17 U.S.C. § 109. "[T]he first-sale defense provides that once a given copy has been sold its owner may do with it has he pleases (provided that he does not create another copy or a derivative work)." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 763 (7th Cir. 2016) (internal quotation marks omitted).

The plaintiffs argue that they could not have been aware of any copyright

infringement by Ty in the period when Creatail was manufacturing the toys because Ty's distribution was protected under the first sale doctrine. They contend that Ty engaged in actionable copyright infringement only after it contracted with a different manufacturer. If Ty's actions did not constitute infringement during the period in which the plaintiffs allegedly made misrepresentations, the plaintiffs argue, then they could not have known about any infringing conduct as required under the first element of equitable estoppel.

Ty makes numerous arguments in an effort to show that the first sale doctrine cannot defeat summary judgment, but none is persuasive.

### a. "Owner of a particular copy"

First, Ty argues that it was not the "owner of a particular copy" as required by 17 U.S.C. § 109. In support of this contention, it argues that Creatail was Ty's "original equipment manufacturer" (OEM) and that the first sale doctrine does not apply to the copyright interests of an OEM. Ty further points out that the toys bore "Ty's trademarks, Ty's copyright notice, and Ty's address," but that "Creatail's name appears nowhere on the products." Ty's Reply Br., dkt. no. 78, at 8.

Ty's argument lacks merit because Creatail's status as a manufacturer is irrelevant to determining whether Ty owned a copy as defined in the Copyright Act. Section 109(a) includes no language limiting the first sale doctrine in cases where a manufacturer owns a copyright over goods that it creates for distribution. Ty points to no statute or case—and the Court can find none—excluding manufacturers from the first sale doctrine. Indeed, courts regularly consider the first sale doctrine in the context of agreements between manufacturers and distributors. *See, e.g.*, *Omega S.A. v.*

*Costco Wholesale Corp.*, 776 F.3d 692, 695 (9th Cir. 2015); *Fish Kiss LLC v. N. Star Creations, LLC*, No. CV 17-8193, 2018 WL 3831335, at *5 (D.N.J. Aug. 13, 2018); *Int'l Equip. Trading, Ltd. v. AB SCIEX LLC*, No. 13 C 1129, 2013 WL 4599903, at *6 (N.D. Ill. Aug. 29, 2013); *UMG Recordings, Inc. v. Norwalk Distribs., Inc.*, No. SACV 02-1188 DOC, 2003 WL 22722410, at *4 (C.D. Cal. Mar. 13, 2003).

Ty contends that, notwithstanding the absence of case law supporting its position, it would "turn[] the first sale doctrine on its head" to apply the doctrine under these circumstances. Ty's Reply Br., dkt. no. 78, at 7. In particular, it argues that

> [i]f Kim were permitted to charge Ty with copyright infringement after making Ty's toys on which Kim placed Ty's trademarks and Ty's copyright notice, then any manufacturer of copyrighted goods could sue its customers for copyright infringement if the customer ever decided to have its product manufactured elsewhere.

*Id.* at 8. This argument is unpersuasive. The plaintiffs' basis for invoking the first sale doctrine is not merely that they were a "manufacturer of copyrighted goods"; rather, it is that Ty acquired ownership of goods in which the plaintiffs owned the copyright. And applying the first sale doctrine under these circumstances comports with section 109(a)'s goal of "fostering the free alienability of goods," *id.* at 8; otherwise, Ty's distribution of the toys that Creatail manufactured might have infringed Kim's alleged copyrights.

Having determined that section 109(a) generally applies to sales between manufacturers and distributors, the Court concludes that a reasonable jury could find that section 109(a) covers Ty's distribution of the toys that Creatail manufactured. A jury could conclude that Ty was the owner of "copies" within the meaning of the Copyright Act. The Act defines "copies" as "material objects . . . in which a work is fixed by any method . . . and from which the work can be perceived, reproduced, or otherwise

8

communicated." 17 U.S.C. § 101. Notably, Ty has not presented, with its current motion, evidence refuting Kim's allegation that he holds copyrights in the fifteen toys. If a jury concludes that Kim owns the copyrights, it could also conclude that Ty owned copies of the toys, which are "material objects" from which Kim's alleged copyright "can be perceived."

Finally, Ty does not point to evidence or even allege that Ty's ownership of these copies failed to meet the other requirements of section 109(a). Although the record is silent about the nature of the agreement between Ty and the plaintiffs, there is no evidence that Ty distributed goods under a rental or licensing agreement that might obviate the first sale doctrine.[2] *See* 17 U.S.C. § 109(d) ("The privileges described by subsections (a) and (c) do not, unless authorized by the copyright owner, extend to any person who has acquired possession of the copy . . . by rental, lease, loan, or otherwise, without acquiring ownership of it."). Ty similarly points to no evidence that the copies were not "lawfully made" within the meaning of the Copyright Act. *Id.* § 109(a).

For these reasons, the Court concludes that there is a genuine dispute concerning whether the first sale doctrine applies to the manufacturing agreement between Creatail and Ty.

        **b.**      **Awareness of infringing conduct**

Second, Ty contends that the first sale doctrine does not undermine its equitable estoppel defense because the party against whom estoppel is invoked need only be

---

[2] Given the lack of evidence in the record concerning the nature of the manufacturing agreement between Creatail and Ty, the Court concludes that a reasonable jury could find that Ty acquired ownership of the goods. For its part, Ty does not dispute this essential element of the first sale doctrine.

9

aware of the other party's conduct, not the fact that it the conduct constitutes infringement. This argument lacks merit because the plaintiffs do not contend that they failed to understand the legal implications of Ty's conduct. Instead, they argue that they could not have known about any infringing conduct because no infringement actually occurred. The parties agree that awareness of infringing conduct is an element of the equitable estoppel defense, *see Bourne Co.*, 990 F.2d at 937, which means that Ty must show that plaintiffs knew about its alleged infringement during the relevant time period. The plaintiffs contend that there was no infringement of which it could have been aware because the first sale doctrine protected Ty's distribution of the toys. Whether or not the plaintiffs knew or believed that Ty's conduct legally amounted to infringement is altogether irrelevant to that question.

Ty also argues that the plaintiffs were aware of its allegedly infringing conduct because they knew that Ty "claimed to own copyrights in the toys[] by virtue of the copyright notices" on the hangtags. Ty's Reply Br., dkt. no. 78, at 10. Ty's argument seems to be that its allegedly false representations that it owned the copyrights in the toys constituted infringing conduct of which the plaintiffs were aware. But Ty cites no authority suggesting that its allegedly false copyright claims constitute infringement within the meaning of the Copyright Act. To the contrary, 17 U.S.C. § 106 enumerates six exclusive rights of copyright holders (reproduction, adaptation, distribution, performance, display, and convergence) but does not prohibit false copyright assertions. Although another provision of the Copyright Act, 17 U.S.C. § 506(c), creates criminal liability for such assertions, courts have held that this criminal statute does not confer a private cause of action for copyright infringement. *See, e.g., Ortiz v.*

*N.M. Dep't of Cultural Affairs*, No. CIV 16-1396 JB/JHR, 2018 WL 691644, at *7 (D.N.M. Jan 31, 2018); *Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1098 (S.D. Cal. 2017). Ty points to no authority holding that a separate alleged criminal violation constitutes infringing conduct for the purposes of determining whether the plaintiffs are estopped from pursuing their civil infringement claims.

### c. Relevance of prior conduct

Third, Ty argues that Kim's conduct in manufacturing toys bearing Ty's copyright notice satisfies the second element of the estoppel defense—misleading conduct—even if Kim did not become aware of any of Ty's allegedly infringing conduct until later. Ty contends that Kim need not have been aware of the alleged infringement when he manufactured the toys because he eventually learned about the alleged infringement. In other words, Ty argues that even if the first sale doctrine protected its distribution of the toys that Kim manufactured, Ty should still prevail on its equitable estoppel defense because Kim's conduct before he learned about the alleged infringement is relevant to prove estoppel.

Ty relies on the Fifth Circuit's decision in *Carson v. Dynegy, Inc.*, 344 F.3d 446 (5th Cir. 2003). In *Carson*, the plaintiff was an employee of an energy company who developed and copyrighted a spreadsheet for generating bids. After he was fired, the employee sought a declaratory judgment establishing his ownership of the copyright. The district court held that the plaintiff was equitably estopped from bringing his claim. The Fifth Circuit affirmed. The court held that the fact that the employee had allowed his employer to use his spreadsheet before he was fired constituted conduct sufficient to support the estoppel defense even though the conduct predated the infringement, all

11

of which allegedly occurred after his termination. The court reasoned that pre-infringement conduct should be relevant to determine whether the defendant reasonably relied on that conduct, because "reliance can develop—indeed, *did* develop—while a putative copyright holder is employed by an alleged infringer." *Id.* at 454. The court also held that the plaintiff's conduct during his employment was sufficient to show that he knew about the defendant's infringing conduct. *Id.* Ty argues that under *Carson*, it would be immaterial that no infringement occurred until after the plaintiffs engaged in the conduct that allegedly induced detrimental reliance. What matters, according to Ty, is that the plaintiffs were aware that Ty was conducting itself as though it owned the copyrights.

*Carson* is not binding on this Court, but it has limited value even as persuasive authority. As the court in *Carson* stated, an essential element of equitable estoppel is that "the plaintiff must know the facts of the defendant's infringing conduct." *Id.* at 453. The Fifth Circuit's holding effectively disregards this requirement. Although the court did not discuss this element in any detail, in order to find that it was satisfied the court must have reached one of two conclusions: either (1) it was sufficient that the plaintiff knew about the defendant's non-infringing use of the copyrighted material (that is, its use of the spreadsheet with permission) during his employment; or (2) it sufficed that he later discovered the infringement after having induced the defendant's reliance through his previous conduct as an employee.[3] Either resolution reduces the first element of

---

[3] A third possibility is that the Fifth Circuit concluded that the plaintiff knew about the alleged infringement because he reasonably should have foreseen that the defendant would continue to use his copyrighted spreadsheet after he withdrew permission. This is an implausible reading of *Carson*, however, because it rests on a factual finding about what the plaintiff should have known that the court did not expressly make. In any case,

12

equitable estoppel to a nullity. Any plaintiff who gives permission to use copyrighted material (or, as in this case, sells goods to a distributor) obviously knows about the defendant's non-infringing use of the material. And any plaintiff who sues for copyright infringement necessarily has become aware of the defendant's infringement at some intervening time. To adopt the approach of *Carson* would therefore be to effectively eliminate the first element of the test for equitable estoppel because that element would be satisfied in every case. *Cf. Carmichael Lodge No. 2103 v. Leonard*, No. CIV S-07-2665 LKK/GGH, 2009 WL 2985476, at *15 (E.D. Cal. Sept. 16, 2009) (acknowledging that *Carson* is inconsistent with the requirement that the plaintiff know of the infringing conduct).

Even if the approach taken in *Carson* is appropriate in the context of an employer-employee relationship, it would be incongruous to apply it to an agreement between a manufacturer and a distributor akin to the one in this case. In an employment relationship, the rule in *Carson* has the effect of "prohibit[ing] an alleged copyright owner from maintaining an infringement claim against his employer, after permitting that employer to use his creation to adapt existing procedures or systems." *Carson*, 344 F.3d at 454-55. In other words, an employee like the plaintiff in *Carson* may not convince his employer to make its operations dependent upon using copyrighted work, later withdraw permission to use the work, and then sue for infringement if the employer keeps using the work. But this principle makes considerably less sense in the context of a distribution agreement. In order for the manufacturer to distribute its copyrighted goods through another entity, it must

---

this interpretation would not assist Ty because it has not argued that the plaintiffs should have anticipated that Ty would seek to have the toys manufactured elsewhere.

necessarily license or otherwise permit the distributor to do something (*e.g.*, sell the copyrighted product) that would constitute infringement if the distributor did it without permission. It would contravene the purpose of such an agreement to hold that the manufacturer risks being estopped from later asserting copyright claims against a distributor merely by contracting with the distributor in the first place.

The Court concludes that in order for Ty to prevail on its equitable estoppel defense, it must show that the plaintiffs were aware of Ty's infringing conduct when they induced its detrimental reliance; it is insufficient to show that the plaintiffs were aware of Ty's allegedly lawful distribution. Because there is a genuine factual dispute concerning whether Ty's distribution of the toys that the plaintiffs manufactured was protected under the first sale doctrine, Ty cannot support its motion for summary judgment merely by showing that the plaintiffs knew about that potentially lawful distribution.

Alternatively, the Court concludes that the facts in *Carson* are sufficiently different to preclude its application in this case. *Carson* turned on the plaintiff's withdrawal of permission; the defendant's conduct remained unchanged before and after the plaintiff was terminated. Put another way, the defendant engaged in a single course of conduct that became arguably unlawful only after the plaintiff attempted to withdraw permission to use his copyrighted material. Here, by contrast, Ty's conduct changed. Whereas it had previously obtained its toys from Creatail, once the manufacturing agreement ended in August 2018 Ty entered into a new agreement with a third-party manufacturer. The plaintiffs contend that the manufacture and sale of products under this new agreement constituted infringement. This case thus differs from *Carson*. There is not only a dispute about whether Ty's conduct constituted

infringement as a matter of law; there is also a dispute about whether the relevant conduct had even begun. The Fifth Circuit's conclusion in *Carson* that the plaintiff was aware of the defendant's single course of conduct therefore fails to support Ty's motion for summary judgment.

### d. Contradictions in the plaintiff's allegations

Fourth, Ty argues that the plaintiffs' invocation of the first sale doctrine contradicts the allegations in their first amended complaint as well as Kim's statements to the Chinese court. With respect to the complaint, Ty points out that it contains no limiting timeframe suggesting that the infringement began only after Ty contracted to have the toys manufactured elsewhere. Ty does not explain why this putative omission is legally significant; complaints do not constitute binding judicial admissions. In any event, however, it is entirely consistent with the allegations in the complaint for the plaintiffs to contend that Ty's distribution was protected under the first sale doctrine. For example, the plaintiffs alleged that after their agreement with Ty ended, Ty "began having cheaper counterfeit plush toys made by other manufacturers in China." First Am. Compl., dkt. no. 30, ¶ 20. And the complaint does not specifically allege that any infringement occurred during the period when Creatail was manufacturing the toys.

Ty also takes issue with the explanation Kim offered to the Chinese court regarding why he did not object to placing Ty's copyright notice on the hangtags and sewn-in labels. According to Ty, Kim stated that "[i]n business practice, all plush toys are customarily marked with 'All Copyright Reserved' or the like, . . . but it does not necessarily prove the relations of copyrights ownership between Ty Inc. and [Creatail]." Ty's Reply Br., dkt. no. 78, at 12. Once again, this statement is entirely consistent with

the plaintiffs' arguments in opposition to summary judgment. The quoted passage purports to explain why Kim believed that including Ty's copyright information would not eliminate Kim's copyright interests. But the plaintiffs invoke the first sale doctrine for an entirely different purpose: to show that no infringement of those interests occurred during the relevant time period. And even if these arguments were contradictory, Ty has failed to show that any contradiction is determinative of the present motion.

In sum, the Court concludes that a reasonable jury could find that the first sale doctrine protected Ty's distribution of the toys manufactured by Creatail and that as a result there is a genuine dispute regarding whether Ty engaged in conduct constituting copyright infringement during the period in which Creatail manufactured the toys. Because Ty is not entitled to summary judgment on its equitable estoppel defense unless it can show that no reasonable jury could find that the plaintiffs were unaware of allegedly infringing conduct, the first sale doctrine precludes granting the motion on the basis of copyright estoppel.

**B.     Abandonment**

Ty also contends that it is entitled to summary judgment on the plaintiffs' copyright claim because Kim abandoned the copyright. Ty primarily relies on *Bell v. Combined Registry Co.*, 397 F. Supp. 1241 (N.D. Ill. 1975), in which the court held that "[a]bandonment of a copyright occurs if the owner intends to give up his copyright protection. Some overt act is necessary to evidence such an intent . . . [and] mere inaction is not enough." *Id.* at 1249. Ty asserts that "it is undisputed that Kim intended to give up whatever copyrights he claimed in the plush toys at issue by manufacturing the toys and placing the copyright notice thereon indicating that Ty alone owned all

copyrights in the toys." Ty's Mot. for Summ. J., dkt. no. 54, at 13.

Ty is not entitled to summary judgment on this basis as there is a genuine dispute about whether Kim intended to abandon the copyright. *Bell* furnishes a useful contrast. In that case, the poem's author sent out hundreds of Christmas cards that included his copyrighted poem. The defendants also introduced evidence that the author wrote in his diary that he left his poem as a gift to the world. *Bell*, 397 F. Supp. at 1249.

In this case, however, Ty has not introduced comparably probative evidence of Kim's intent. Although attaching Ty's copyright notice to the toys is arguably consistent with an intent to abandon, it is not the only reasonable explanation for Kim's conduct. For example, Kim attests in an affidavit that his limited English fluency prevented him from understanding the legal implications of the copyright notice. Similarly, Kim's explanation to the Chinese court—that he included the copyright notices as a concession to Ty but did not believe or intend that the notices would affect his own copyright interests—provides another possible reason for his conduct. At the summary judgment stage, the Court may not weigh the evidence but instead must draw all reasonable inferences in Kim's favor. *See Ashby*, 908 F.3d at 230. If a jury were to credit either of Kim's explanations, as it reasonably could, it could find that Kim did not intend to abandon his copyrights.

Ty also relies on *Seshadri v. Kasraian*, 130 F.3d 798 (7th Cir. 1997), in which the Seventh Circuit considered but did not decide whether the author of journal article abandoned his copyright in the article. The court noted that "[a]uthorizing another to publish under [the author's] sole name would amount to a public disclaimer of

17

authorship" that would constitute abandonment. *Id.* at 805. In *Seshadri*, however, the court noted that the record was ambiguous about the plaintiff's intent such that summary judgment was inappropriate. *See id.* (noting that the record did not support summary judgment on the basis of abandonment because it was possible to interpret the plaintiff's conduct as consistent with a desire to maintain his copyright). For the reasons the Court has already identified, this case presents a similar ambiguity. Ty is not entitled to summary judgment based on its abandonment defense.

**C.     Patent claim**

Finally, Ty argues that it is entitled to summary judgment on the claim of patent infringement based on its equitable estoppel defense. The elements of equitable estoppel for patent claims mirror those for copyright claims: "(1) the patentee, through misleading conduct (or silence), leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim." *John Bean Techs. Corp. v. Morris & Assoc., Inc.*, 887 F.3d 1322, 1327 (Fed. Cir. 2018).

Ty contends that it is entitled to summary judgment because the plaintiffs failed to address the patent estoppel defense in their response brief. It is true that the plaintiffs' discussion of their patent claim is limited to a single sentence in which the plaintiffs cite the doctrine of patent exhaustion. But in the present circumstances, that is enough to defeat summary judgment on the patent infringement claim. Like the first sale doctrine for copyright claims, patent exhaustion limits the patent holder's right to exclude others from offering his or her inventions for sale. "When a patentee chooses

to sell an item, that product is no longer within the limits of the monopoly and instead becomes the private, individual property of the purchaser, with the rights and benefits that come along with ownership." *Impression Prods., Inc. v. Lexmark Int'l, Inc.*, 137 S. Ct. 1523, 1531 (2017) (internal quotation marks omitted).

The plaintiffs' invocation of the doctrine of patent exhaustion is sufficient to allow the patent infringement claim to withstand summary judgment. In order for Ty to prevail on the equitable estoppel defense, it must show that the plaintiffs engaged in misleading conduct, which in turn requires Ty to establish that the alleged infringer "knows or can reasonably infer that the patentee has known of the allegedly infringing activities for some time." *High Point SARL v. Sprint Nextel Corp.*, 817 F.3d 1325, 1330 (Fed. Cir. 2016). This requirement means that, as with the plaintiffs' copyright claim, Ty is entitled to summary judgment only if no reasonable jury could conclude that the plaintiffs were unaware of the alleged infringement (or, alternatively, that Ty did not reasonably infer that the plaintiffs knew about it). The question of patent exhaustion therefore runs parallel to issue of whether the first sale doctrine precludes summary judgment on the copyright claim. The resolution of those issues is the same: if there is a genuine dispute of fact concerning whether Ty acquired ownership of the patented toy, then there is a factual dispute about whether Ty was infringing the patent—and, by extension, whether the plaintiffs could be aware of any infringement.

For the same reasons that the Court found that a genuine factual dispute regarding the applicability of the first sale doctrine precludes summary judgment on the copyright claim, disputes of fact concerning the applicability of the patent exhaustion doctrine preclude summary judgment on the patent claim.

**Conclusion**

For the foregoing reasons, the Court denies the defendant's motion for summary judgment [dkt. no. 54].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 20, 2019